## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT  DIVISION

**ANIL VELUVOLU, et al**                    **CIVIL ACTION NO. 18-CV-0197**

**VERSUS**                                  **JUDGE FOOTE**

**NISSAN NORTH AMERICA, INC.,**             **MAGISTRATE JUDGE HORNSBY**
**et al**

## TABLE OF CONTENTS

**Page**

Table of Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  Principles of redhibition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       Redhibition is the avoidance of a sale or a reduction in the purchase price
          because of defects. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A thing is defective if it lacks a certain level of quality.. . . . . . . . . . . . . . . . . . . . . . . . 3

       Multiple defects can be the basis for recision of the sale.. . . . . . . . . . . . . . . . . . . . . . . 3

       Plaintiffs do not need expert testimony to prove their case,  but just to prove
          they are reasonably establishing their claim; this can be done by
          circumstantial evidence.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       Plaintiff isn't required to show exact cause of defects for a complicated piece
         of machinery. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       The buyers may prove defect existed by circumstantial evidence. . . . . . . . . . . . . . . . . 4

II.  Depositions and exhibits show genuine issues of material fact regarding defects. . . . . . . . . . 5

       Plaintiffs object to Mr. Jongkind's expert qualifications.. . . . . . . . . . . . . . . . . . . . . . . 9

i

However, Mr. Jongkind's deposition debunks the argument in the motion
that Dr. Veluvolu used the vehicle in a manner that would cause the battery failures. . . 11

III.  The cases cited by defendants are either inapposite or factually or procedurally different. . . 15

The cases cited by defendants do not mandate granting its motion. . . . . . . . . . . . . . . . . 15

IV.  Rescission of the sale versus reduction in the price is a question of material fact. . . . . . . . 18

V.  Non-pecuniary damages are allowed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI. MMWA claims are present and viable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII.  Negligent repair exists as a cause of action against AHM. . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF CASES

**CASES**                                                                        **Page**

*Arnold v. Wray Ford, Inc.*, 606 So.2d 549 (La.App. 2 Cir.,1992). . . . . . . . . . . . . . . . . . . . . . . . . 5

*Aucoin v. Southern Quality Homes*, LLC,
    984 So.2d 685, 695, 2007-1014; (La. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bendana v. Mossy Motors, Inc.*, 347 So.2d 946 (La.App. 4th Cir. 1977). . . . . . . . . . . . . . . . 5

*Breaux v. Winnebago Industries, Inc.*,
    282 So.2d 763 (La.App. 1st Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, CIV.A. 10-4441,

    2013 WL 990026, at *5 (E.D. La. Mar. 13, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Casablanca Convertors, Inc. v. Morning Paper, Inc.*, 627 So.2d 699 (La.App. 3 Cir.,1993). . . . . 5

*Cangelosi v. McInnis Peterson Chevrolet, Inc.*,
    373 So.2d 1346 (1st Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Carr v. Nissan Motor Corp.*,
    546 So.2d 582, (La.App. 1 Cir.,1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Chalmers v. Stephens Chevrolet, Inc.*,
    461 So.2d 395 (La. App. 4th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chaudoir v. Porsche  Cars of N. Am.*, 95-729 (La.App. 3 Cir. 12/6/95, 13);

    667 So.2d 569, 578, *writ denied sub nom.*

    *Chaudoir v. Porsche Cars of N. Am.*, 96-0800 (La. 5/31/96); 673 So.2d 1033. . . . . . . . . 20

*Commercial Union Ins. Co. v. Ryland Dodge & Chrysler, Inc.*,

    457 So.2d 255, 257 (La. Ct. App.1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Creger v. Robertson*,
    542 So.2d 1090, 1095 (La.App. 2nd Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cutrer v. Kentwood Motors, Inc.,* 351 So.2d 817, *819 (La.App. 1977). . . . . . . . . . . . . . . . . . . 4

*David v. Thibodeaux*,
   2004-0976 (La.App. 1 Cir. 5/11/05), 916 So.2d 214,
   *writ denied*, 2005-1575 (La. 1/27/06), 922 So.2d 545. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Davidson v. New Roads Motor Co., Inc.*, 385 So.2d 319 (La. App. 1st Cir. 1980). . . . . . . . . 5, 19

*Edelman Sys., Inc. v. Capitol GMC, Inc.,* 345 So.2d 99, 102 (La. Ct. App.1977). . . . . . . . . . . 17

*Edmundson Bros. v. F. M. Carrier & Son*,
   552 So.2d 1229 (La.App. 3rd Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Estopinal v. Bourshie*,
   420 So.2d 749, 751 (La. Ct. App.1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fidele v. Crescent Ford Truck Sales, Inc.*, 00-1934

   (La.App. 5 Cir. 4/11/01, 9); 786 So.2d 147. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Foster v. Craig Equipment Co.*, 550 So.2d 818 (La.App. 2d Cir.1989). . . . . . . . . . . . . . . . . . . 5

*Green v. Benson & Gold Chevrolet*, 01-1161 (La.App. 5 Cir. 2/26/02, 7);

   811 So.2d 970, 975, *writ denied*, 2002-0891 (La. 5/31/02); 817 So.2d 96. . . . . . . . . . . 17

*Hardin v. Forest River, Inc.*, CV 17-2132, 2017 WL 3311260,  (E.D. La. Aug. 3, 2017). . . . . . 21

*Harris v. Drexler Motor Company, Inc.*, 339 So.2d 1304 (La.App. 1st Cir. 1976).. . . . . . . . . . . 4

*Harper v. Coleman Chrysler-Plymouth-Dodge*,
   510 So.2d 1366 (La.App. 3rd Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hunt v. Ford Motor Co.*,
   341 So.2d 614 (La.App. 2d Cir.1977. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Jackson v. Breard Motor Co.*, 167 La. 857, 120 So. 478 (1929). . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jones v. Winnebago Indus., Inc.*, 47,137 (La.App. 2 Cir. 5/16/12, 13); 92 So.3d 1113. . . . . . . 20

*Jordan v. Sec. Co.*, 425 So.2d 333, 335 (La. Ct. App.1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Joseph v. Bohn Ford, Inc.*, 483 So.2d 934, Rehearing Denied, Prod.Liab.Rep.

iv

(CCH) P 10,915 (La., Feb 24, 1986) (NO. 85-C-1677) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Landaiche v. Supreme Chevrolet, Inc.*,
602 So.2d 1127, 1131 (La. Ct. App.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McGee Motors, Inc. v. Moran*,
393 So.2d 757 (La. App. 1st Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McNeely v. Ford Motor Co., Inc.*, 98-2139 (La.App. 1 Cir. 12/28/99, 17);

763 So.2d 659, 670, *writ denied*, 2000-0780 (La. 4/28/00); 760 So.2d 1182. . . . . . . . . 21

*Moreno's, Inc. v. Lake Charles Catholic High Sch., Inc.*, 315 So.2d 660, 662 (La.1975).. . . . 5, 16

*Morgan v. Mazda Motor of America, Inc.*, 640 So.2d 453 (La. App. 3 Cir. 1994). . . . . . . . . . . 19

*Neck v. Coleman Oldsmobile, Inc.*,
356 So.2d 532 (La. App. 1st Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Peters v. Pattison Pontiac Co.*, 259 So.2d 99. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Peyton v. Charvet's Garden Ctr.*, 427 So.2d 592 (La. Ct. App.1983). . . . . . . . . . . . . . . . . . . 17

*Pike v. Stephens Imports, Inc.*, 448 So.2d 738, 742 (La. Ct. App.1984). . . . . . . . . . . . . . . . . 22

*Poche v. Bayliner Marine Corp.*, 632 So.2d 1170 (La. App. 5 Cir. 1994). . . . . . . . . . . . . . . . 19

*Rey v. Cuccia*,
298 So.2d 840 (La. 1974).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*Rhodes v. All Star Ford, Inc.*, 599 So.2d 812, 814 (La. Ct. App.1992). . . . . . . . . . . . . . . . . . 11

*Stroderd v. Yamaha Motor Corp., U.S .A.*, No. 04-3040, 2005 WL 2037419

(E.D.La. Aug. 4, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Vincent v. Hyundai Corp.*, 633 So.2d 240 (La.App. 1 Cir.,1993). . . . . . . . . . . . . . . . . . . . . . 5

*Young v. Ford Motor Co., Inc.*,
595 So.2d 1123 (La.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18, 19

**STATUTES**

La. Civ. Code art. 1998. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

La. Civ. Code art. art. 2520... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 4, 18

La. Civ. Code art. 2530. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT  DIVISION**

| | |
|---|---|
| **ANIL VELUVOLU, et al** | **CIVIL ACTION NO. 18-CV-0197** |
| **VERSUS** | **JUDGE FOOTE** |
| **NISSAN NORTH AMERICA, INC.,** **et al** | **MAGISTRATE JUDGE HORNSBY** |

## PLAINTIFFS' RESPONSE TO  AMERICAN HONDA MOTOR CO., INC.'S MOTION FOR SUMMARY JUDGMENT

NOW INTO COURT, through undersigned counsel, come plaintiffs, Anil Veluvolu and Jennifer Veluvolu, who respond to the  motion for summary judgment filed by American Honda Motor Co., Inc. ("American Honda" or "AHM"), as follows:

### Introduction.

In this redhibition and Magnuson Moss Warranty Act case involving the purchase of a $200,000.00 hybrid gas-electric 2017 Acura NSX "supercar", American Honda has filed a motion for summary judgment claiming that because plaintiffs have not hired an expert witness they cannot meet their burden of proof; AHM contends that explanations of how the starter battery is charged in the owner's manual somehow warned plaintiffs of the no start condition that plaintiff Dr. Anil Veluvolu encountered multiple times, and that other defects, such as loud door rattling, failure to door handles to automatically deploy, and infotainment display failure center, do not meet the requirement of showing  redhibitory defects existing in the manufacture of the vehicle.  Failing that, defendant contends this court can't order a rescission of the sale as a matter of law, inexplicably arguing that, although La. Civil Code Article 2520 clearly states that the thing sold with defects that rendered it either absolutely useless or its use to inconvenient that it must be presumed that a buyer

1

would not have bought the thing had he known of the defect, failure of the vehicle motor to start, THE major function on which its function and use depends, combined with other defects, would not qualify under redhibition.  AHM next argues that the Magnuson Moss Warranty Act does not apply, negligent repair is not applicable, and argues that nonpecuniary damages should not be allowed.

Plaintiffs however produce the deposition of Mr. Jongkind, AHM's long-time employee and designated "expert"  (Exhibit A),  who debunks the owner's manual defense contrary to assertions in AHM's brief.  Mr. Jongkind's deposition shows that he does know the precise cause of the battery failure, and can't say that the batteries were defective, although they may be.  However, plaintiffs attach excerpts of the former service manager at the selling dealership, Orr Acura of Shreveport, at the time the repairs were made, who testified that the repair orders show a battery failure code on the first battery, and a "bad cell" on the replacement battery, which then had to be replaced, both replacement in less than 1600 miles and 10 months of ownership.  The door rattling issue still exists despite Orr Acura's repair attempt, and Mr. Jongkind admits that, all other things being equal, the infotainment display not working for 10 minutes was a failure.  Plaintiffs show that their burden of proof is not somehow heightened from circumstantially showing that defects existed by AMH assigning an in-house "law department" investigator to the case; plaintiffs show that the rule is that circumstantial evidence is sufficient without a description of the exact defect in a complicated piece of machinery, such as this "super-car"; and that the vehicle was intended for a significant non-pecuniary interest under Civil Code Article 1998, because Dr. Veluvolu bought it for his pleasure as with his other high-performance vehicles he own owns other classic cars, and does not need this vehicle for basic transportation.  Plaintiffs also show below that the MMWA does apply in that the manufacturer does have a duty to properly repair under it express, written warranty, and that the

2

point is not properly argued by the defendant, and that negligent repair can apply.  Therefore, the motion for summary judgment should be denied.

## I.  Principles of redhibition.

### Redhibition is the avoidance of a sale or a reduction in the purchase price because of defects.

Redhibition is the avoidance of a sale on account of some vice or defect of the thing sold which renders it either absolutely useless or its use so inconvenient that it must be presumed that the buyer would not have purchased it had he known of the vice or defect.  Louisiana Civil Code Article 2520.  However, a reduction in the purchase price is an alternative if the problems are not so severe as to warrant a rescission of the sale.

### A thing is defective if it lacks a certain level of quality.

A defect, as contemplated by Louisiana Article 2520, means that the thing has some physical imperfection or deformity, or it lacks necessary components or a certain level of quality.  *Harper v. Coleman Chrysler-Plymouth-Dodge*, 510 So.2d 1366 (La.App. 3rd Cir. 1987).  *Edmundson Bros. v. F. M. Carrier & Son*, 552 So.2d 1229 (La.App. 3rd Cir. 1989).

### Multiple defects can be the basis for recision of the sale.

Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor or have been repaired.  *Aucoin v. Southern Quality Homes, LLC,*  984 So.2d 685, 695, 2007-1014; (La.,2008); *Young v. Ford Motor Co., Inc.*, 595 So.2d 1123 (La.1992); *Cangelosi v. McInnis Peterson Chevrolet, Inc.*, 373 So.2d 1346 (1st Cir. 1979); *Breaux v. Winnebago Industries, Inc.*, 282 So.2d 763 (La.App. 1st Cir. 1973).  Therefore, although defendants argue that because some of the complaints were repaired, that there is no basis for the claim, as shown above, some defects can be repaired and still support a redhibition suit.

### Plaintiffs do not need expert testimony to prove their case,  but just to prove they are reasonably establishing their claim; this can be done by circumstantial evidence.

The proof of the defect(s) need not be by direct or expert testimony; the plaintiffs need only show the thing failed to perform in the intended manner during normal use. *McGee Motors, Inc. v. Moran,* 393 So.2d 757 (La. App. 1st Cir. 1980).  *Rey v. Cuccia*, 298 So.2d 840 (La. 1974). *Chalmers v. Stephens Chevrolet, Inc.*, 461 So.2d 395 (La. App. 4th Cir. 1984).  *Neck v. Coleman Oldsmobile, Inc.*, 356 So.2d 532 (La. App. 1st Cir. 1977).   In this case, however, most of the issues are documented by Acura's authorized repair facility, and the evidence is overwhelming, in any event.

### A plaintiff isn't required to show exact cause of defects for a complicated piece of machinery.

In redhibition cases, it has been recognized that the vendee need not prove the exact cause of the defect in a piece of complicated machinery to recover in redhibition. *Peters v. Pattison Pontiac Co.*, 259 So.2d 99, *102 (La.App., 1972). See also: *Jackson v. Breard Motor Co.*, 167 La. 857, 120 So. 478 (1929).  The purchaser is not burdened with the impossible task of proving the cause of every defect or difficulty he encounters with a complicated piece of machinery, and it is only sufficient that he merely show their existence. *Harris v. Drexler Motor Company, Inc.*, 339 So.2d 1304 (La.App. 1st Cir. 1976).  *Cutrer v. Kentwood Motors, Inc.,* 351 So.2d 817, *819 (La.App. 1977).  Multiple battery replacements show the no start condition here and the door rattle is also documented and shown to still exist, both by repairs orders from AHM's authorized dealer, Orr Acura.

### The buyers may prove defect existed by circumstantial evidence.

Proof of defect in redhibition case may be by direct or circumstantial evidence which gives rise to reasonable inference that defects existed at time of sale. LSA-C.C. arts. 2520, 2530;

*Casablanca Convertors, Inc. v. Morning Paper, Inc.*, 627 So.2d 699 (La.App. 3 Cir.,1993). *Vincent v. Hyundai Corp.*, 633 So.2d 240 (La.App. 1 Cir.,1993). The evidence must give rise to a reasonable inference that the defect existed at the time of sale, but circumstantial evidence is <u>not required to negate all other possible causes</u>. *Arnold v. Wray Ford, Inc.*, 606 So.2d 549 (La.App. 2 Cir.,1992); *Rey v. Cuccia*, supra; *Foster v. Craig Equipment Co.*, 550 So.2d 818 (La.App. 2d Cir.1989).

Proof that the defect(s) existed before the sale to the plaintiff is made by showing that mechanical elements designed and warranted for a certain amount of use fail long before that use without any improper installation or maintenance. *Bendana v. Mossy Motors, Inc.*, 347 So.2d 946 (La.App. 4th Cir. 1977). *Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc.*, 315 So.2d 660 (La. 1975).

When an object designed to work satisfactorily for a number of years fails without explanation in a substantially shorter period, the court may logically draw an inference that a fault existed in its manufacture. *Moreno's, Inc. v. Lake Charles Catholic High Schools, supra*. Further, latent defects appearing well after the sale can be a basis for redhibition if they are not the normal result of ordinary use. *Davidson v. New Roads Motor Co., Inc.*, 385 So.2d 319 (La.App. 1st Cir. 1980). *Moreno's Inc. v. Lake Charles Catholic High Schools*, *supra*.

**II. Depositions and exhibits show genuine issues of material fact regarding defects.**

The depositions contain affirmations of fact that support plaintiffs' claims of redhibitory defects.  The deposition of Dr. Veluvolu (attached to defendant's motion) shows the following:

1.    Dr. Veluvolu put a deposit on the vehicle, a 2017 model "hybrid electric supercar", in 2010 or 2011, which was a vehicle that Honda had stopped making in 2005 (Exhibit A, page 10, 16, and 17).

2.    The term "supercar" means "high performance, craftsmanship, and cost" to him (page 147).

3.    The doctor eventually bought this car "for his pleasure" and it had approximately 3,400 miles at the time of his deposition (page 14, 18).

4.    "Most all" of his cars he owns are for Dr. Veluvolu's pleasure, except for a Cadillac Escalade his wife drives, and a Mercedes he drives that he can fits all his kids in (page 18).

5.    Dr. Veluvolu and his wife paid One Hundred Ninety-Six Thousand, Four Hundred Fifteen ($196,415.00) dollars for the vehicle (page 23 of his deposition, and page 1 of 33 to Exhibit D of Trey Pierce's deposition, attached hereto as Exhibit B, the sales invoice).

6.    Before the problems with non-starting, he would use it to drive his son to school, and on weekends; however, he doesn't drive it anymore, because he gets a little worried sometimes that it may stop and if he can't get to a hospital "somebody could die" because he is an oncologist so his patient are usually critically ill and he would like to use to the car to visit them (page 36 - 42);

7.    He also owns or has owned two Porsches, a Maserati, a Ferrari F430 Spider, a Ferrari Testarossa, as well as several Mercedes (page 47-60).

8.    Unfortunately, several times the starter battery on the NSX, a 12-volt battery [described by defendants as a "low-voltage" battery, see below], would not start the car and left him stranded, including one incident when it had to be towed by a special tow truck from the Dallas area and another time a visit was made by Orr Acura dealership personnel at his

6

mother's house (page 68 - 76, 93) to jump off the vehicle; the vehicle would be dead and would be shown by the vehicle exhibiting a condition where the door handles do not deploy (as designed) when the vehicle is approached with the remote key in hand (page 74, 75);

9.    The parasitic draw described in the petition no exists, but a variation of it does, when the door handles do not deploy when you walk up, and it used to "always break my heart" (page 74, 75);

10.   Dr. Veluvolu was "angry" when he was given the battery tender (described as an "accessory" in other testimony), because he bought a hybrid electric car that's not supposed to require a battery tender (page 76).

11.   He was upset when they were removing the door panel and putting "cushioning things" in the door at Orr Acura to stop the door rattles, and he didn't want them to do it anymore, take the car apart "because you rip things and break things", so he quit telling them (page 78);

12.   His now nine year old son (page 144) helped him customize the car on a screen at the dealership with illuminated kick plates (page 84);

13.   On February 13, 2017, was the first time it was towed in when he was planning to take his son to school;

14.   Later, the service manager Trey and the head service technician visited his mother's home because it wouldn't start, and it was jumped off (page 68 - 72);

15.   The door handles are still not deploying and the rattles exist, as well as the touchscreen not working right just prior to the inspection (page 81);

16.   The, on April 27, 2017, the engine would not crank again when he was trying to take his son to school  (page 95, 96);

17.     It rattles every time you drive it (page 97);

18.     On August 23, 2017, it did not start again and was jumped off and driven by Orr Acura personnel to the dealership and picked up in September, 2017 (page 28-29);

19.     In November, 2017, the door rattle in both doors caused him to bring it back to the dealership (page 108);

20.     Dr. Veluvolu was told by Orr Acura service department personnel that he could let it sit for three months, who said it was from the owner's manual (page 122); however he never let it sit that long,  "two, three maybe" weeks (deposition page 106).;

21.     He "loved this car", and his son who helped him pick it out, it was bought to "keep forever like he did with the Ferraris", and his son felt the same way, but "he's lost interest completely in this car, and it mental anguish to him", and he can't even gauge his son's anguish, he's nine years old, but he can say his son doesn't enjoy it anymore, and that's what he does with these vehicles, "enjoy them with my family" (page 144, 145);

22.     He feels humiliated by the look in his kids' eyes when it won't start (page 145);

23.     Dr. Veluvolu testified had he known of the defects prior to the sale,, he would not have bought the vehicle, at any price (page 148).

Defendants admitted that the battery was replaced twice, so it is on its third battery (page 41 of Mr. Jongkind's deposition).  Dr. Veluvolu testified he does not use the car as he intended and thus the car is unfit for the particular purpose bought, to use and enjoy as a "supercar", but to also provide reliable transportation to hospitals and where Dr. Veluvolu can reliably get to his patients to administer life-saving care.

**Plaintiffs object to Mr. Jongkind's expert qualifications.**

Since the filing of the summary judgment response of the plaintiffs on the motion to dismiss, the deposition of Mr. Jongkind was taken on April 16, 2019 and it is attached hereto as Exhibit A. AHM has listed this long time employee (since 1993) as their expert witness.  Plaintiffs object to his qualifications for any type of expert for the following reasons:

1.      He merely worked at an Amoco service station in his home town in high school as a "night manager", page 9;

2.      Although at one point ASE (Automobile Service Excellence) certified, he no longer holds those certifications, perhaps for as long as 15 years, and holds no other third-party certifications (page 10);

3.      Although a member of the Society of Automotive Engineers (SAE), he is not a "degreed engineer" although he stated he operates in some capacity of an engineer.  No other explanation was made him on that comment (page 10);

4.      He "believes" there  are degreed engineers that work for AHM, but he's never been listed as an engineer for design purposes (page 11);

5.      Mr. Jongkind instead works in the "law department", dispatched "into the field" to inspect/investigate Honda products that are the subject of claims or litigation, and has been in the "law department for 15 years, with the title of "senior technical specialist".  He was dispatched in Veluvolu for that reason (Page 11, page 16);

6.      Before that, he was a "manager" in the "product regulatory office", overseeing "compliance matters" and as an "interface to a number of federal agencies" as well as a Honda

9

representative to a number of voluntary standards, organizations; helping to oversee the compliance activity on safety standards and regulations for products in the U.S. (Page 11);

7.  His duties extend to law mowers and generators, all products that American Honda sells, although 95% of his work pertains to automobiles (page 13);

8.  His formal education consists of obtaining a BS in automotive technology and management from Ferris State University in Big Rapids, Michigan (page 14);

9.  He was assigned to this case after the lawsuit was filed by counsel for AHM (page 16).

10.  Mr. Jongkind explained the vehicle is a "hybrid gas and electric vehicle" (page 19) and he has heard the term "supercar" applied to this type of vehicle (page 18);

11.  The Acura NSX is Honda's only "high-performance sports car" offered since the year 2017, except the Honda Civil Type R, which is not a hybrid (page 22);

12.  The base warranty on the Veluvolu vehicle is four years, 50,000 miles, with a longer powertrain warranty and emission warranty (page 22, 23);

13.  When asked if the vehicle was well taken care of as far as maintenance an cosmetics, the witness states the vehicle was "clean" when he inspected it in December, 2018, with no body damage (page 23, 24), and he was asked to go see how the vehicle actually performs (page 24);

Mr. Jongkind has not been shown to be an expert witness in anything independently of his own knowledge of how AHM's warranty system works and that is not a recognized field.  He has not otherwise been presented as expert in a certain field, nor shown to be with his bare qualifications.

**However, Mr. Jongkind's deposition debunks the argument in the motion that Dr. Veluvolu used the vehicle in a manner that would cause the battery failures.**

Since the filing of the summary judgment response of the plaintiffs on the motion to dismiss, the deposition of Mr. Jongkind was taken on April 16, 2019 and it is attached hereto as Exhibit A.

Defendant argues that the defects cannot be presumed to any defects that existed at the time of the manufacture because they "did not manifest until at least three months after the sale (page 11 of its brief). The defendant conflates that fact with the three day presumption of pre-delivery existence of defects that appear within three days from delivery, found in La. Civ. Art. 2530. The three-day presumption is not relied on by plaintiffs, and the three-day presumption does not abrogate the principles states above that defects appearing well after the sale can be found by the court to have existed at the time of manufacture, especially when they are warranted for a period of time and fail in a substantially shorter period. Thus, although the presumption is that defects must have existed before the sale if it manifests itself within three days, in the absence of other explanations, later appearing defects may be inferred to have pre-existed the sale, when such defects do not usually result from ordinary use. *Rhodes v. All Star Ford, Inc*., 599 So.2d 812, 814 (La. Ct. App.1992). Mr. Jongkind admits that the batteries could have been defective and that the infotainment center could have been malfunctioning, and confirms the rattles in the door, attempted to be, but not, fixed by Orr Acura.

In his deposition, Mr. Jongkind states the following additional material facts:

1.     The "super-car"'s manual, despite defendant's argument on page 10 of AHM's brief, does not support the implication that Dr. Veluvolu didn't check the battery and thus caused the problems; Mr. Jongkind admits that page 403 of the owner's manual, which describes checking the 12-volt battery, is merely to check for corrosion, and he did not see any

corrosion on the battery's terminals during his inspection.  He also testified that as dead as the vehicle's battery was, as described by Dr. Veluvolu in his deposition (a deposition Jongkind attended the day of the inspection), the driver information interface described on page 403, visible to the driver sitting in the cockpit, would not be visible  (page 28, Jongkind deposition).

2.   Mr. Jongkind's testimony explains the "unexpected" issue of finding a dead battery on pages 29-33 of his deposition.  He explained that Page 28 of the manual, entitled "Handling the Unexpected", and argued by defendant on page 10 of its brief is somehow a warning that the battery can go dead and thus absolves AHM of responsibility, refers the user back to page 403 of the manual, and page 431 and page 434, which merely gives safe jump starting procedures like any other vehicle.  The witness admitted that page 28 of the owner's manual describes "those kind of things are what we might consider unexpected", although he declines to admit that Dr. Veluvolu's experience with multiple no-start issues were unexpected, although "an individual might find a dead battery unexpectedly" (page 32).

3.   Mr. Jongkind admits that page 75 of the owner's manual, which shows that a battery icon should display in a self-test when starting the vehicle, and otherwise comes on when the 12-volt battery is not charging, never came on for Dr. Veluvolu, and that if the system will not turn on because the battery is totally dead, none of the indicators shown would come on.  He also admits that none of Orr Acura's repair orders note the battery indicator coming on (page 33, 34 of Jongkind deposition).

4.   Mr. Jongkind admits that page 123 of the owner's manual, mentioned in defendants memorandum on page 10, footnote 15, as being important, only refers to the security alarm

may go off if the 12-volt battery goes dead or is replaced, a condition never noted on the Veluvolu vehicle (page 35, Jongkind deposition).

5.  Page 128 of the manual, also cited in defendants memorandum on page 10, footnote 15, merely describes how the vehicle automatically powers off if left for more than 30 minutes with the transmission in park and the power mode in accessory, not indicated on any repair or not testified to by Dr. Veluvolu (page 36).

6.  Page 414 of the owner's manual talks about "vehicle storage", which Mr. Jongkind admits was for "nonuse" (page 37), and states "if you need to park your vehicle for an extended period of time, more than one month, there are several things to do to prepare it for storage", including using an accessory battery charger.  Mr. Jongkind admits that the manual says you are to get advice from an Orr Acura dealer with regard to how to maintain your 12-volt battery, which would "be able to provide the 12-volt accessory charger", which was not supplied at the time of the sale to Dr. Veluvolu (page 38).  Mr. Jongkind admits the manual does not state that the 12-volt battery will go dead if you do not use the battery charger for more than one month (page 39), nor does it state anywhere in the owner's manual that the battery will go dead if a customer does not use the vehicle for more than one month, and believes the manual does not refer to that battery going dead on any other page (page 39).

7.  Despite there being three year models of the newly re-designed Acura NSX, this is the only incident investigated by Mr. Jongkind of failure of the battery to not go dead (page 41).

8.  The battery has been replaced twice under warranty by AHM, which covers defects (page 41).

9.  However, Mr. Jongkind cannot say that the warranty (against defects) were properly applied, because he couldn't say that the battery (read batteries) was (were) defective (page 42).

13

10.   According to Mr. Jongkind, "it is impossible to say" that if the owner now uses the vehicle at the same frequency as before the last battery repair without (using) the battery tender, that the last battery replaced was operating incorrectly.  All he can say is that based on his (Dr. Veluvolu's) testimony and his inspection, the vehicle is operating correctly (page 42).

11.   Mr. Jongkind sticks to his original answer regarding whether or not his conclusion would be that it (the vehicle) was operating incorrectly before the last battery replacement, "that that's impossible to say", although he's not rejecting the possibility that there was a problem with one of the batteries (page 42, 43).

12.   Mr. Jongkind had "no reason to believe" that the batteries replaced by Orr Acura were not genuine Acura replacement batteries specified for the model vehicle owned by Dr. Veluvolu (page 45).

13.   Mr. Jongkind at first  refused to directly answer if the infotainment screen not responding for 10 minutes would operate incorrectly, then admitted that it could be that the screen malfunctioned, and then admitted that if none of the other factors he described were present, the screen would be malfunctioning (pages 47-52).

14.   Mr. Jongkind admits to the rattles in one of the doors despite the dealer working on both doors (page 52 - 55).

To summarize, defendant's contention in the memorandum in support of its motion that plaintiff cannot show that the no-start conditions were manufacturing defects ignores the clear implication of the fact of the no-starts, AHM replacing batteries under warranty, the failures occurring within just months of the sale, the owner's manual not requiring a battery tender as alleged,  there not being any unusual "storage" or "nonuse" by Dr. Veluvolu, and no other explanation other than malfunctions existing in the car or components causing Dr. Veluvolu to lose

14

faith in the vehicle to reliably give him transportation, at a premium cost. To quote defendant's memorandum, plaintiff <u>will be able to</u> "exclude those other fair instances other than a product's inherent defectiveness with a 'fair amount of certainty'".

### III.  The cases cited by defendants are either inapposite or factually or procedurally different.

#### The cases cited by defendants do not mandate granting its motion.

The defendant cites cases wherein other factual scenarios, inapplicable to this instance, and resting on their particular facts, resulted in a dismissal of a redhibition case.  However, they do not mandate that the court deviate from the well-established principles that, especially with vehicles, and especially with specialty vehicles, such as this "supercar".  As shown above the evidence leads to no other reasonable explanation that there were manufacturing defects that existed, as testified to by Mr. Jongkind and Orr Acura employees.

In *Jordan v. Sec. Co.*, 425 So.2d 333, 335 (La. Ct. App.1982), the trial court's findings of failure to make a prima facie case in a shotgun redhibition case were made after a full trial, not on a motion for summary judgment.  While two fact witnesses, Jordan and Johnson merely establish that a shotgun "hung up", the court found that, in light of the testimony of defendant's expert, plaintiff could not established a prima facie case of a redhibitory defect, because the expert explained a myriad of other issues, including lack of maintenance could have caused the issue.  Here, on this motion for summary judgment, as shown by the combined testimony of Dr. Veluvolu's long history with specialty, high-performance, or luxury vehicle, and Mr. Jongkind's testimony, the probability is much greater that the batteries or some other component caused the no-start and other issues, and Mr. Jongkind admits the batteries may have been defective.  Here, there is are genuine issues of material fact that should be addressed by a fact-finder and not through a summary judgment.

15

In another case cited, *Moreno's, Inc. v. Lake Charles Catholic High Sch., Inc*., supra, the Louisiana Supreme Court stated:

> As this Court has recognized for more than fifty years:
>
> `It is not incumbent upon the buyer to seek out, allege, and prove the particular and underlying cause of the defect which makes the thing sold unfit for the purpose intended, particularly when the thing is a complicated piece of machinery; but it suffices if he alleges and afterwards proves as a fact that such defects exist.' Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871 (1924).
>
> In this case the proof suffices that there was a defect in the manufacture of the compressor and its components.

The court found that where the manufacturer of the compressor had warranted it for ten years, "failure of the compressor, then, by clear implication, was due to mechanical failure." Once again, that was not on a motion for summary judgment but after full trial.

In *Commercial Union Ins. Co. v. Ryland Dodge & Chrysler, Inc*., 457 So.2d 255, 257 (La. Ct. App.1984), "no defect of any kind has been suggested or proved by the plaintiff", other than the fact of a fire that destroyed the vehicle.  The defendant had no notice of a defect, no attempts to repair.  Here, we have the repair orders, attached as an exhibit to the deposition of Trey Pierce (Exhibit B, excerpts of deposition, with Exhibit D), stating "battery failed load test" at 827 miles. Mr. Pierce, former service manager testified in deposition that the because the battery failed the load test, it was removed and replaced  (Pages 21 and 22, Exhibit D). At 1,568, it was once again found that the new battery had a bad cell and it was once against replaced (pages 27 of his deposition, page 30 of exhibit D to his deposition).  Obviously, unlike that case, here, there is documentation of a problem with bad batteries and no start, plus door rattles.

Another case cited by the opposition, *Peyton v. Charvet's Garden Ctr.*, 427 So.2d 592 (La. Ct. App.1983), held that plaintiff failed to prove bugs were present at time of sale of sod in a suit against the seller of the sod, after a full trial.  Unlike here, there was no proof of a defect pre-existing the sale, there was no complicated machinery, no warranty for a period of time, and no documentation of defects, as here.  Obviously, that case is inapplicable.

In *Edelman Sys., Inc. v. Capitol GMC, Inc.,* 345 So.2d 99, 102 (La. Ct. App.1977), the plaintiff failed to meet its burden of proof under facts that included no "probative testimony, expert or lay, as to the nature of the defects necessitating the repairs. All of the repairs of any consequence were made by others than the defendants."  That is not the case here, where employees of Orr Acura testified as to the battery failures, attempts to work on the doors, and plaintiff graphically described the failure of the door latches to open and the display failure.  No other reasonable inference exists other than that defects exist in this vehicle.  In any event, a trier of fact could conclude that defects existed that made the use of the vehicle so inconvenient that a reasonable person would not have purchase this "supercar", at any price.

In *Green v. Benson & Gold Chevrolet*, 01-1161 (La.App. 5 Cir. 2/26/02, 7); 811 So.2d 970, 975, *writ denied*, 2002-0891 (La. 5/31/02); 817 So.2d 96,  plaintiff "failed to present expert testimony or evidence at trial that a defect existed in the vehicle or that the repairs were necessitated by any defect", unlike here, where two batteries failed because of a failed load test and because of a bad cell, as testified to, by the employees of Orr Acura, and multiple no-start incidents.  That case is not applicable.

In *Fidele v. Crescent Ford Truck Sales, Inc.*, 00-1934 (La.App. 5 Cir. 4/11/01, 9); 786 So.2d 147, 153, the court found plaintiff admitted in his testimony that he had no personal knowledge why the vehicle might be defective, and the evidence indicated that plaintiff may have been caused by his

17

own lack of maintenance (failure to operate the vehicle without sufficient oil causing engine damage), whereas, here, there was no allegation of negligence or lack of attention by Dr. Veluvolu, just repeat battery "failures" that are otherwise unexplained.  The batteries are a component part of the vehicle, obviously designed to work as a high-performance machine.  Mr. Jongkind couldn't say the batteries were defective, and defendants did not establish Dr. Veluvolu "stored" the vehicle, which would be the only reason for a battery tender or accessory charger.  In fact, he testified he drove it regularly on weekends, and although may have let it sit for a maximum of three weeks (deposition page 106).  However, there was no failure by Dr. Veluvolu to do anything required of him.  Although defendant implies that Dr. Veluvolu's belief that the vehicle could sit for up to three months without a charge (page 77 of his deposition), there is no evidence that he let it sit that long.  The repair order says "a couple of weeks or more" (Exhibit B, attachment Exhibit D to deposition of Trey Pierce, page 30 of 33), Dr. Veluvolu explained that was "two, three maybe", and the "upper limit" would be "probably three" weeks  (Page 106, Dr. Veluvolu's deposition).

### IV.  Rescission of the sale versus reduction in the price is a question of material fact.

According to LSA CC Art. 2520, third paragraph, "[a] defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price.  The existence of such a defect limits the right of a buyer to a reduction of the price."

Where defects are such that they render the use of the purchased object inconvenient and imperfect to the extent that the buyer would not have purchased the item had he or she known of the defects, the buyer is entitled to a rescission of the sale instead of merely a reduction in the price. *Davidson v. New Roads Motor Co., Inc.*, supra; *Young v. Ford Motor Co., Inc.*, supra; *Morgan v.*

18

*Mazda Motor, Am.*, 93-1378 (La. App. 3 Cir. 5/4/94); 640 So.2d 453.  Indeed, it can be argued that plaintiffs are entitled to a rescission of the sale <u>as a matter of law</u>.  As was stated in *Young v. Ford Motor Co.*, Inc., *supra*,

> In situations where new vehicles present such defects as would render their use inconvenient and imperfect to the extent that the buyer would not have purchased the automobile had he or she known of the defects, <u>the buyer is entitled to a rescission of the sale instead of merely a reduction in the price</u>. Davidson v. New Roads Motor Co., Inc., 385 So.2d 319 (La.App. 1st Cir.), writ denied, 391 So.2d 454 (La. 1980).
>
> (Emphasis supplied.)

Thus, it may be said that the buyers *<u>are entitled to</u>* a rescission of the sale, instead of merely a reduction in price.  *Young v. Ford Motor Co.*, Inc., supra; *Poche v. Bayliner Marine Corp.*, 632 So.2d 1170 (La. App. 5 Cir. 1994).

This has been affirmed by Louisiana's Third Circuit Court of Appeal, even where a car has been driven a large number of miles by the plaintiff.  Thus, in *Morgan v. Mazda Motor of America, Inc.*, supra, although the defendant argued that it was entitled to a reduction as a matter of law, the court upheld the court's decree of rescission where a top-of-the line Mazda 929 had been driven over 50,000 miles at the time of the trial.

Dr. Veluvolu testified that he would not have purchased this vehicle at any price, considering the defects. That is relevant evidence as to what a "reasonable person" would have done, and creates an issue of material fact.

Thus, a genuine issue of material fact is whether the problems with the vehicle merely diminished its usefulness or its value or, if the problems were so severe as to warranty a rescission of the sale.  This should not be determined in this case as a matter of law, but left to the fact finder.

### V.  Non-pecuniary damages are allowed.

Defendants states the seminal case, when citing *Chaudoir v. Porsche Cars of N. Am.*, 95-729

(La.App. 3 Cir. 12/6/95, 13); 667 So.2d 569, 578, *writ denied sub nom*. *Chaudoir v. Porsche Cars*

*of N. Am.*, 96-0800 (La. 5/31/96); 673 So.2d 1033, which stated:

> We find that the purchase of a "hand built," top of the line performance car which is
>
> held out to be the "finest car in the world," satisfies the requirements of La.Civ.Code
>
> art. 1998. Consequently, we find no error in the jury's assessment of damages for
>
> mental anguish.

In this case, the defendant admit, including Mr. Jongkind, that the term "supercar", applies

to this vehicle.  Dr. Veluvolu testified he purchased it "for his pleasure", as stated above.  Whether

the gratification of some nonpecuniary interest is a principal object of a contract is a question of fact.

*Jones v. Winnebago Indus., Inc.*, 47,137 (La.App. 2 Cir. 5/16/12, 13); 92 So.3d 1113, 1121.

Obviously, therefore, there is a genuine issue of material fact on that issue.


### VI. MMWA claims are present and viable.

The defendant argues that the claims under the Magnuson Moss Warranty Act are derivative

of the implied warranties, in this case, under Louisiana law.  Cumulated actions under both the state

and federal statute have long been recognized by Louisiana federal courts.  As explained in *Hardin*

*v. Forest River, Inc.*, CV 17-2132, 2017 WL 3311260,  (E.D. La. Aug. 3, 2017), the MMWA creates

a statutory cause of action for consumer damaged by failed to comply a written warranty obligation.

Since the defendants imply that the redhibition, implied warranty claim would result in dismissal of

the MMWA, and don't provide an independent argument, the cause of action under the MMWA is

not properly put at issue by defendant's motion.  Mr. Jongkind testified as to the warranty and that

all repairs were attempted within the warranty period.  The problems still exist with the vehicle considering the door handle failure, display screen failure, and rattle in the door.  This is a genuine issue of material fact.

## VII.  Negligent repair exists as a cause of action against AHM.

A manufacturer of a vehicle in question, is deemed to be in bad faith in selling a defective product and is liable to the buyer for all damages recoverable under Article 2545. Pursuant to Article 2545, a seller in bad faith "is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees." *McNeely v. Ford Motor Co., Inc.*, 98-2139 (La.App. 1 Cir. 12/28/99, 17); 763 So.2d 659, 670, *writ denied*, 2000-0780 (La. 4/28/00); 760 So.2d 1182.

A dealer is under a "high duty" to detect and repair problems that exist within its warranty system. In *Joseph v. Bohn Ford, Inc*., 483 So.2d 934, Rehearing Denied, Prod.Liab.Rep. (CCH) P 10,915 (La., Feb 24, 1986) (NO. 85-C-1677), the court held that  Bohn's (the selling dealership's) negligent failure to repair the defective condition, which inferentially existed at the time of the sale, cannot exonerate the manufacturer for producing the van with defective brakes.  See *Hunt v. Ford Motor Company*, 341 So.2d 614 (La.App. 2 Cir.1977), which states a franchised dealer has a "high duty" to detect and repair problems in its manufacturer's vehicle that may cause injury..

Likewise, here AHM failed to have the vehicle fixed within a reasonable time and is liable even if negligence existed with Orr Acura.

The defendants cite *Stroderd v. Yamaha Motor Corp., U.S .A.*, No. 04-3040, 2005 WL 2037419(E.D.La. Aug. 4, 2005) as precluding a negligent repair claim cause of action a

manufacturer.  However, another court in the Eastern District has ruled differently.  In *C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH*, CIV.A. 10-4441, 2013 WL 990026, at *5 (E.D. La. Mar. 13, 2013), the court, in criticizing *Stroderd v. Yamaha Motor Corp., U.S .*A, supra. stated:

> In reality, the Civil Code carve out preserves to the plaintiff the right to bring causes of action under Chapter 9 of Title VII of Book III of the Civil Code, which includes not only redhibition claims but also contract-based claims such as breach of warranty and breach of contract based fraud pursuant to article 1953.

> In this case, plaintiffs claim that the repeat repairs having to do with the no start issue created a breach of contract of repair by AHM in failing to make sure Orr Acura promptly and completely did the repairs, and that under *Bohn v. Ford,* supra, AHM is liable for general damages for negligent repair, which are allowed under general breach of contract law.  See *Pike v. Stephens Imports, Inc.*, 448 So.2d 738, 742 (La. Ct. App.1984), which stated that while the defendant "contends that plaintiff is not entitled to recover damages "for his inconvenience, loss of use, aggravation, delay and mental anguish" in a "breach of contract" action involving no tortious conduct. Based on our interpretation of later jurisprudence interpreting the landmark Meador decision, however, we find no error in the trial judge's award of these damages under the circumstances in the instant case."

> This cause of action is viable under these cases.

## CONCLUSION

The plaintiffs show that there are multiple defects in this supercar related to AHM's manufacture of the vehicle, all of which, except the infotainment center complaint arose within 10 months of the sale, and with less than 1600 miles on the vehicle.  Thus, multiple defects have been attempted to be repaired, one apparently repaired, and some still exist, satisfying the requirements of redhibition law, the MMWA, and negligent repair principles.  Dr. Veluvolu do not use the car as

intended anymore and has lost the use of it as intended, for his pleasure.  Plaintiffs have shown documentation of the problems and attempted repairs, and Mr. Jongkind's assignment by AHM's "law department" does not change the principles regarding how redhibition cases are proved. Considering the rules in redhibition that multiple defects can be the basis for a redhibition claim *even if many or minor or have been repaired*, the arguments of the defendants do not give reason for this court to grant a summary judgment.  Genuine issues of material fact exist as stated in the plaintiffs' statement of material facts attached hereto.  Therefore, summary judgment, is not proper.

**Respectfully submitted,**

*s/ Fred A. Pharis*

**FRED A. PHARIS**
of **PHARIS LAW OFFICES**
831 DeSoto Street
Alexandria, LA  71301
Telephone:  (318) 445-8266
Fax: (318) 445-5981
Bar Roll No. 1536
 Email: fpharis@pharislaw.com
**ATTORNEY FOR PLAINTIFFS**