UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| ANIL VELUVOLU and <br> JENNIFER VELUVOLU <br><br> **Plaintiffs** <br><br> v. <br><br> AMERICAN HONDA MOTOR CO. INC. <br><br> **Defendant** | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | CIV. ACTION NO.: 5:18-cv-00197-EEF-MLH |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPLY TO MOTION FOR SUMMARY JUDGMENT OPPOSITION (Doc. 21)

### TABLE OF CONTENTS

I.    Plaintiffs cannot meet their burden of proof in redhibition ............................................. 1

    A.    "No start" complaints. ................................................................................................ 1

    B.    Door handles ............................................................................................................. 4

    C.    Door "rattle" ............................................................................................................. 5

    D.    Infotainment screen .................................................................................................. 6

II.    Even if plaintiffs have any redhibition case, it is not one for rescission .......................... 7

III.    Nonpecuniary damages are inappropriate ......................................................................... 8

IV.    Without a redhibition claim, plaintiffs have no MMWA claim ........................................ 9

V.    The LPLA precludes plaintiffs' "negligent repair" claim .............................................. 10

VI.    Conclusion ....................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**

*C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH,*
2013 U.S. Dist. LEXIS 34646 (E.D. La. 2013) ..........................................................................10

*Cripps v. Louisiana,* 2014 U.S. District LEXIS 75293, *22 (M.D. La. 2014) ............................8

*Funches v. Progressive Tractor & Implement Co., L.L.C.,* 484 So. 2d 110 (La. 1986) ..........1, 7

*Hardin v. Forest River, Inc.,* 2017 U.S. Dist. LEXIS 122068 (E.D. La. 2017) .........................10

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.,*
MDL-991 (E.D. La. 8/15/95), 1995 U.S. Dist. LEXIS 12398................................................9, 10

*Jones v. Winnebago Inc.,* 92 So. 3d 1113 (La. App. 2d Cir. 2012) .........................................8, 9

*Jordan v. Security Co.,* 425 So. 2d 333 (La. App. 3d Cir. 1982) .................................................1

*Manning v. Scott-Hixson-Hopkins, Inc.,* 605 So. 2d 233, 235 (La. App. 2d Cir. 1992) ............10

*Moreno's, Inc. v. Lake Charles Catholic High Schools, Inc.,* 315 So. 2d 660 (La. 1975) ..........4

*Napoli v. Guillory,*
509 So. 2d 798 (La. App. 1st Cir.), *writ denied,* 512 So. 2d 1182 (La. 1987) ............................8

*Rhodes v. All Star Ford, Inc.,* 599 So. 2d 812, 814 (La. App. 1st Cir. 1992) ..............................4

*Sills v. Magnolia Estates, Inc.,* 2008 U.S. Dist. LEXIS 7878, *8 fn. 10 (W.D. La. 2008) ..........1

*Tucker v. State Farm Fire & Cas. Co.,* 981 F. Supp. 461, 465 fn. 2 (S.D. Tex. 1997) ...............8

*Young v. Ford Motor Co.,* ............................................................................................................9

**Statutes**

La. Civ. Code art. 2315................................................................................................................10

La. Rev. Stat. 9:2800.53...............................................................................................................10

Fed. R. Civ. Proc. 56(d) ................................................................................................................4

Fed. R. Evid. 702 ..........................................................................................................................3

**MAY IT PLEASE THE COURT:**

Plaintiffs' opposition to AHM's motion for summary judgment either fails to comprehend or willingly mischaracterizes AHM's arguments. AHM remains entitled to judgment.

**I.  Plaintiffs cannot meet their burden of proof in redhibition.**

Contrary to what plaintiffs suggest,[1] AHM does not contend that proof of redhibitory defects always requires expert testimony, or that this is a "warnings" case, or that minor collective defects can never be redhibitory. However, in every redhibition case, plaintiffs must "prove the existence of a defect at the time of the sale." *Jordan v. Security Co.*, 425 So. 2d 333, 335 (La. App. 3d Cir. 1982). They need "not negate all other possible causes," but they must "exclude other reasonable hypotheses with a fair amount of certainty." *Sills v. Magnolia Estates, Inc.,* 2008 U.S. Dist. LEXIS 7878, *8 fn. 10 (W.D. La. 2008). In this case, for each of plaintiffs' complaints, the evidence – not only AHM's but also plaintiffs' – discloses "reasonable hypotheses" that have nothing to do with alleged defects, but plaintiffs offer no competent evidence to exclude them. Their redhibition claim must therefore be dismissed, because they have "fail[ed] to make a showing sufficient to establish the existence of an element essential to" their redhibition case "and on which [they] will bear the burden of proof at trial." *Funches v. Progressive Tractor & Implement Co., L.L.C.,* 905 F.3d 846, 849 (5th Cir. 2018).

**A.  "No start" complaints.** Plaintiffs complain that because of a weak or dead battery, their car would not start on four occasions. But they testified that early on, Orr Acura (the dealership) explained to them that storing the car's key/remote too close to the vehicle itself would drain the

---

[1] *See* Doc. 21 at p. 1: "American Honda has filed a motion for summary judgment claiming that…." References to page numbers indicate page numbers assigned by plaintiffs at the bottom of each page.

1

battery.[2]  Their opposition shows that Orr's service advisor, Joe Pierce, testified that "[r]emotes on all of our cars, if they are within a certain few feet of the car, there is modules on all the cars that will turn on getting it ready for you to approach it to open the door, unlock it or whatever, they can turn on and they will stay on as long as they are detecting that remote."[3]

Furthermore, the vehicle's owner's manual debunks plaintiff's assertion that his car "was supposed to be able to sit for three months without activity and still maintain battery charge."[4]  The manual anticipates a "dead battery" under various instances; most notably, after extended periods of non-use unaccompanied by use of an "accessory battery charger,"[5] and plaintiff's own testimony establishes that "no start" incidents occurred after periods of non-use.[6]  Plaintiffs' opposition shows that Pierce testified that "eventually over sitting for a long period of time," the normal "voltage draw" on the car's battery will "pull it down."[7]  Pierce also testified that plaintiff did not experience any "no start" issues during times when plaintiff had been <u>using</u> the car.  For example, after the June 2017 incident in which Orr had to charge the battery after plaintiff had left his car sitting "a few weeks" in his mother's garage,[8] Pierce "called him later in the week. … He said it had been doing fine …. <u>He was just driving it</u>."[9]  Similarly, Pierce recalled that several

---

[2] AHM's exhibit "5" (deposition of Jennifer Veluvolu) at p. 21; *id.* at p. 22-24 (plaintiff confirming that the dealership "told us to do that … after that first time …. [A]fter that first time it … didn't start, they told us that – that may be an issue, so we moved it.  And we didn't keep it in that drawer anymore, it went back into my master bedroom, my closet and it was kept away.")
[3] Plaintiffs' exhibit "B" (deposition of Joe Pierce) at p. 48.
[4] AHM's exhibit "4" (deposition of Anil Veluvolu) at pp. 76-77.
[5] Doc. 17-2 at pp. 10-11; AHM exhibit "2-A" (Owner's Manual) at p. 414.
[6] Doc. 17-2 at p. 12.
[7] Plaintiffs' exhibit "B" (deposition of Joe Pierce) at p. 29.  Plaintiffs cryptically suggests that the deposition testimony of AHM's senior technical specialist James Jongkind "debunks the owner's manual defense contrary to assertions in AHM's brief." Doc. 21 at p. 2.  But they seem to presume that AHM cited other "dead battery" references in the manual to suggest that the specific events described in those references account for the alleged "no start" issues that plaintiff experienced.  *See* Doc. 21 at pp. 11-13.  In fact, the manual merely establishes that (a) plaintiff was wrong to presume that under no circumstances can or should the 12-volt battery in his car ever discharge and (b) non-use of the vehicle for an extended period can result in a "dead battery."  AHM is not asserting an "owner's manual defense" – at least not in any sense that the opposition apparently suggests.
[8] AHM's exhibit "4" (deposition of Anil Veluvolu) at p. 70.
[9] Plaintiffs' exhibit "B" (deposition of Joe Pierce) at p. 24 (emphasis added).

2

months after the last "no start" incident (August 2017), which had followed the car's "sitting for several weeks without being used," plaintiff had "said <u>he had been driving it more</u>, I think, if I remember the conversation."[10]

Plaintiffs offer no competent evidence to exclude hypotheses that remote storage and/or non-use drained the car's battery. And to the extent that plaintiffs' counsel asked Mr. Pierce to do so, he was unable and unwilling: "Q. So you don't believe it was caused by him not driving it enough? A. I can't say that. I don't know."[11] AHM's senior technical specialist James Jongkind testified that whether the vehicle was "operating incorrectly" or whether other factors, including non-use, accounted for plaintiffs' "no start" complaints, was "impossible to say."[12] Furthermore, Pierce directly refuted the suggestion that some inherent defect in the car caused the "no starts": "I have seen no evidence supporting that. Did all the draw test on the car and everything has passed every time. Engineers came out here and did the same thing. It all passed then, so I don't think the car has a draw.[13]

Thus, plaintiffs' opposition offers no evidence that to <u>any</u> extent rules out "non-defect" explanations for their "no start" complaints, including the simplest explanation, that of non-use. Plaintiffs cannot defeat summary judgment by relying on what they describe as Jongkind's alleged

---

[10] Plaintiffs' exhibit "B" (deposition of Joe Pierce) at pp. 26, 33 (emphasis added).
[11] Plaintiffs' exhibit "B" (deposition of Joe Pierce) at p. 38.
[12] Plaintiffs' exhibit "A" (deposition of James Jongkind) at pp. 42-43. Plaintiff's objections to Jongkind's qualifications (Doc. 21 at pp. 9-10) must be overruled. Jongkind's curriculum vitae (Doc. 17-4 at p. 29) evidences that as a result of his quarter-century career at AHM, he has developed a "comprehensive understanding of Honda products, technologies, and processes." *Id.* He has personally worked as a Honda Registered Service Technician; he has been previously certified by the National Institute for Automotive Service Excellence; he is a member of the Society of Automotive Engineers; he has had "extensive product technical training by Honda." *Id.* Based on his "technical, or other specialized knowledge" of the subject vehicle, his review of materials associated with this case, and his own inspection of the vehicle on December 13, 2018 (Doc. 17-4 at pp. 25-28), he is qualified under Fed. R. Evid. 702 to opine whether plaintiffs' vehicle is fit for its intended uses and is operating as designed.
[13] Plaintiffs' exhibit "B" (deposition of Joe Pierce) at p. 45. Pierce explained that after the plaintiff's last "no start" incident in August 2017, "that is when we started looking for a parasitic draw to make sure nothing was pulling it down…. Q. And none found? A. Did not find any." *Id.* at p. 28.

"admission" that "the batteries could have been defective."[14] AHM has no burden to rule out "defect" hypotheses; instead, <u>plaintiffs</u> must present evidence that <u>rules out "non-defect" hypotheses</u>. *Moreno's, Inc. v. Lake Charles Catholic High Schools*, 315 So. 2d 660, 662 (La. 1975). Plaintiffs also cannot rely on cases holding that "in the absence of other explanations, later appearing defects may be inferred to have pre-existed the sale;"[15] this case is not one involving an "absence of other explanations," because plaintiffs have failed to present evident to "exclude other reasonable hypotheses." Finally, plaintiffs cannot rely on a mere assertion that at some later time, they "<u>will be able to</u> 'exclude those other fair instances other than a product's inherent defectiveness with a 'fair amount of certainty.'"[16] AHM's motion is before the Court <u>now</u>; and plaintiffs have made no showing "by affidavit or declaration that, for specified reasons, [they] cannot present facts essential to justify [their] opposition." Fed. R. Civ. Proc. 56(d) (West 2019). AHM is entitled to judgment on the issue of whether plaintiffs' "no start" complaints constitute a redhibitory defect in the vehicle.

**B.     Door handles.**  The evidence similarly discloses reasonable explanations for plaintiffs' complaint that sometimes, the car's door handles did not automatically "deploy" when plaintiff approached the vehicle;[17] the most obvious is that the car was <u>functioning as intended</u>. The owner's manual explains that in various situations, the "auto pop-out function" is *intended* to be disabled, including "[i]f the vehicle is left for more than 8 days."[18] Plaintiffs' evidence shows that Pierce explained that "[i]f it goes past a week, they will not…. It was designed that way.[19]

---

[14]     Doc. 21 at p. 11. And what Jongkind actually said was, "I'm not rejecting the possibility that there was a problem with one or both batteries, but I simply do not know…." Plaintiffs' exhibit "A" (deposition of James Jongkind) at p. 43. Irreconcilably, plaintiffs' opposition "object[s] to Mr. Jongkind's expert qualifications" (Doc. 21 at pp. 9-10) while simultaneously seeking to rely on this testimony.
[15]     Doc. 21 at p. 17 (citing *Rhodes v. All Star Ford, Inc.,* 599 So. 2d 812, 814 (La. App. 1st Cir. 1992).
[16]     Doc. 21 at p. 15 (emphasis in original).
[17]     AHM's exhibit "4" (deposition of Anil Veluvolu) at pp. 74-75.
[18]     AHM's exhibit "2" (Operator's Manual) at pp. 108-109.
[19]     Plaintiffs' exhibit "B" (deposition of Joe Pierce) at pp. 25-26.

Plaintiffs offer no competent evidence to exclude the hypothesis that their "door-handle" complaint is attributable to anything other than the vehicle operating as designed.  Certainly, Mr. Jongkind found the handles working properly when he inspected the vehicle on December 13, 2018.[20]  The opposition's suggestion that the situation is "a variation" of a defective "parasitic draw"[21] is both unsupported and refuted by the evidence.  Pierce testified that Orr tested the car for "parasitic draw" and found none.[22]  Notably, plaintiff testified that the door-handle issue is one that he came to associate with "no start" events, suggesting even more that both phenomena are attributable to non-use: "I would walk up to it, and that's when I would know it wasn't going to start, because the door handles would not deploy."[23]  AHM is entitled to judgment on the issue of whether "door handle" complaints constitute a redhibitory defect in the vehicle.

C.  **Door "rattle."**  Plaintiffs' opposition describes this complaint as a "loud door rattling" (Doc. 21 at p. 1), but in fact plaintiff never described it as such in his deposition.  They even filed Mr. Jongkind's testimony that when he drove the car with plaintiff on December 13, 2018, "I heard a very faint rattle or kind of crackling noise coming from the upper part of the driver's door when we were driving over rough roads….  It's a very – as I said in my report, it's a very faint noise"[24] and "only" occurred when driving on rough road surfaces at less than 25 mph.[25]  Orr attributed the perceived issue to set screws loosening over time and a handle cable tapping on the inner door during vehicle movement.[26]  Jongkind explained that "driving a vehicle over rough roads excites

---

| | |
|---|---|
| 20 | Doc. 17-4 (AHM exhibit "2" (Jongkind affidavit and attachments)) at p. 27.  Plaintiffs' objections to Mr. Jongkind's "qualifications" notwithstanding, this is simply a factual observation, not an opinion. |
| 21 | Doc. 21 at p. 7 (citing plaintiff's deposition at pp. 74-75). |
| 22 | Plaintiffs' exhibit "B" (deposition of Joe Pierce) at pp. 28-30. |
| 23 | AHM exhibit "4" (deposition of Anil Veluvolu) at p. 75. |
| 24 | Plaintiffs' exhibit "A" (deposition of James Jongkind) at pp. 53-54. |
| 25 | Doc. 17-4 at p. 27 (Jongkind report). |
| 26 | Doc. 17-4 at p. 26 (Jongkind report). |

materials that are joining each other inside the vehicle, and sometimes you can hear them …. I didn't find that the noise was necessarily abnormal or excessive."[27]

Plaintiffs offer no evidence to rule out that what plaintiff describes as a door "rattle" under limited specific driving conditions is anything other than normal. No evidence of any kind suggests that the issue is attributable to a defect that existed at the time of sale; on the contrary, plaintiff testified that the "rattle" did not manifest until six months after the sale.[28] It does not preclude plaintiff's use of the car: he does not perceive it to be a malfunction, and he has chosen "to let that one go" rather than request repair.[29] Accordingly, AHM is entitled to judgment on the issue of whether plaintiffs' "door rattle" complaints constitute a redhibitory defect.

**D.      Infotainment screen.** The alleged "infotainment display failure"[30] was an unwitnessed, one-time event that plaintiff claims happened on December 12, 2018 – the day before his deposition and more than two years post-sale.[31] According to him, "the touchscreen was not responding [to touch] for ten minutes."[32] That had "never happened before,"[33] and plaintiff's opposition does not allege or even suggest that it has ever happened again. When Mr. Jongkind inspected the vehicle the following day, he "operated the infotainment system touch screen without any problem. The screen reacted appropriately to the touch of my finger every time. There were no delays or abnormal operation."[34]

Again, plaintiffs' own summary judgment evidence establishes that if the "touchscreen" incident happened at all, any manner of explanations other than a "defect" could account for it.

---

<div style="font-size:small">

27    Plaintiffs' exhibit "A" (deposition of James Jongkind) at p. 54.
28    AHM exhibit "4" (deposition of Anil Veluvolu) at p. 95.
29    AHM exhibit "4" (deposition of Anil Veluvolu) at pp. 78-81.
30    Doc. 21 at p. 1.
31    AHM exhibit "4" (deposition of Anil Veluvolu) at p. 66.
32    AHM exhibit "4" (deposition of Anil Veluvolu) at p. 66.
33    AHM exhibit "4" (deposition of Anil Veluvolu) at p. 66.
34    Doc. 17-4 (AHM exhibit "2" (Jongkind affidavit and attachments)) at p. 27. Plaintiffs' objections to Mr. Jongkind's "qualifications" notwithstanding, this is simply a factual observation, not an opinion.

</div>

Mr. Jongkind testified that "there are conditions that can exist where the screen is not responsive to your touch, particularly if you have something on your hands…. I've seen articles on how cold or very dry hands can have an impact on how sensitive the screen is to your touch…. There could be other factors that could affect screen responsiveness that I'm not thinking of now or am unaware of."[35]  Plaintiffs offer no competent evidence to rule out these explanations.  Their assertion that Jongkind conceded that "if none of the other factors he described were present," then "it could be that the screen malfunctioned,"[36] is meaningless.  Plaintiffs offer no evidence to <u>establish</u> that "none of the other factors he described were present," and in any event, a single, one-time, possible "malfunction" of a computer touchscreen two years post-sale hardly constitutes even a "mere 'scintilla of evidence'" of a redhibitory defect and simply "will not do."  *Funches,* 905 F. 3d at 849.  Accordingly, AHM is entitled to judgment on the issue of whether plaintiffs' "infotainment center" complaint constitutes a redhibitory defect in the vehicle.

## II. **Even if plaintiffs have any redhibition case, it is not one for rescission.**

Plaintiffs concede that their "no start" complaints, which could have resulted from something as simple as not driving the car enough, are resolved,[37] were fixed at no charge to them and with minimal inconvenience.  They own a vehicle which all evidence suggests is fully functional, yet they still complain that (1) on one occasion, <u>never repeated since</u>, the infotainment touchscreen temporarily failed to respond to plaintiff's touch for a few minutes; (2) they sometimes need to pull the door handles to open the car doors; and (3) they at times perceive a very minor "rattle" in the doors under limited driving conditions, although they have chosen to "let that one go."[38]  Given this evidence, AHM maintains that no genuine issue exists as to whether plaintiffs –

---

[35]  Plaintiffs' exhibit "A" (deposition of James Jongkind) at pp. 48-51.
[36]  Doc. 21 at p. 14.
[37]  AHM exhibit "4" (deposition of Anil Veluvolu) at pp. 74-75.
[38]  AHM exhibit "4" (deposition of Anil Veluvolu) at pp. 78-81.

if they can maintain any redhibition claim at all – are entitled to rescind the vehicle's sale, as opposed merely to seek a minimal reduction of their purchase price. They are not so entitled.

Plaintiffs' only response is an assertion that simply because plaintiff "testified that he would not have purchased this vehicle at any price," a genuine issue exists as to whether they are entitled to rescind the sale.[39] The assertion is wrong as a matter of law. First, "[i]t is of no moment that the plaintiff buyer who files suit to rescind a sale testifies that he would not have purchased the thing if he would have known of the vice." *Napoli v. Guillory,* 509 So. 2d 798, 799 (La. App. 1st Cir.), *writ denied,* 512 So. 2d 1182 (La. 1987). "The test is not what a plaintiff-buyer would have done, but what a "reasonable man" would have done under like circumstances." *Id.* Second, "[w]hen the facts overwhelm, factual issues may be decided by the Court as a matter of law." *Tucker v. State Farm Fire & Cas. Co.,* 981 F. Supp. 461, 465 fn. 2 (S.D. Tex. 1997), and if denying summary judgment would be "absurd," the Court may find that "a reasonable jury could not find for the plaintiff as a matter of law." *Cripps v. Louisiana,* 2014 U.S. District LEXIS 75293, *22 (M.D. La. 2014). Respectfully, even if plaintiffs occasionally have to pull a door handle or hear an alleged "rattle" that they have chosen to "let go," that evidence fails as a matter of law to establish that their vehicle is "useless" or "so inconvenient" that its sale may be rescinded.

### III. <u>Nonpecuniary damages are inappropriate.</u>

Plaintiffs <u>do not contest</u> that Ms. Veluvolu is not entitled to recover nonpecuniary damages,[40] and AHM therefore requests judgment dismissing Ms. Veluvolu's nonpecuniary claim. Plaintiffs do maintain that Mr. Veluvolu may recover nonpecuniary damages, citing *Jones v. Winnebago Inc.,* 92 So. 3d 1113 (La. App. 2d Cir. 2012), for the proposition that "[w]hether the gratification of some nonpecuniary interest is a principal object of a contract is a question of

---

[39] Doc. 21 at p. 19.
[40] Doc. 21 at p. 20.

8

fact."[41] In reality, though, *Jones* affirmed the dismissal of plaintiff's nonpecuniary damage claim <u>as a matter of law</u>, finding the evidence insufficient to submit that issue to a jury. *Id.* at 1120-21.

In *Young v. Ford Motor Co.,* 595 So. 2d 1123, 1133 (La. 1992), the Louisiana Supreme Court explained that unlike a sales contract for an "antique car" or a "specially designed, custom-built vehicle, a sales contract for a new car – although it may be prompted by "both the pecuniary interest of securing transportation and the nonpecuniary interest relating to enjoyment...," is "primarily pecuniary." Plaintiffs' car, certainly, is expensive. It is not, however, an "antique car," nor is it a "specially-designed, custom-built vehicle," *id.* Moreover, plaintiffs' opposition suggests that plaintiff purchased the car more for commuting and for work than anything else, asserting that "[b]efore the problems with non-starting, he would use it to drive his son to school, and on weekends; however, he doesn't drive it anymore, because he gets a little worried sometimes that it may stop and if he can't get to a hospital 'somebody could die' because he is an oncologist so his patient[s] are usually critically ill and he would like to use the car to go visit them."[42] Accordingly, under the particular circumstances of this case, summary judgment dismissing Mr. Veluvolu's nonpecuniary damages claim is appropriate.

### IV. <u>Without a redhibition claim, plaintiffs have no MMWA claim</u>.

Plaintiffs do not dispute that "claims under the Magnuson-Moss Act are derivative of plaintiffs' state law express and implied warranty claims." *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, 1995 U.S. Dist. LEXIS 12398, *11-12 (E.D. La. 1995). Instead, they argue that their redhibition claim is only an implied warranty claim, and that even if the Court dismisses it, they may still assert an express warranty claim under the MMWA.[43] They are wrong. Under Louisiana

---

[41] Doc. 21 at p. 20.
[42] Doc. 21 at p. 6.
[43] Doc. 21 at pp. 20-21.

9

law, all warranty claims – express or implied – must be brought in redhibition; express warranty claims cannot be asserted outside of a redhibition action. *Manning v. Scott-Hixson-Hopkins, Inc.,* 605 So. 2d 233, 235 (La. App. 2d Cir. 1992), ("damages for breach of warranty in a sales contract, unlike other contractual breaches, are founded in redhibition"). Thus, in *In re Ford Motor Co. Bronco II,* 1995 U.S. Dist. LEXIS 12398 at *22, the court held that "[p]laintiffs may not … maintain a separate action for breach of express warranty" outside of their redhibition claim.

Accordingly, if the Court dismisses plaintiffs' redhibition claim, then plaintiffs will have no express warranty left to assert under the MMWA. *Id.* at 12 ("[I]f plaintiffs' state law express and implied warranty claims are dismissed…, then plaintiffs' Magnuson-Moss Act … claims should be dismissed ….") Plaintiffs' reliance on *Hardin v. Forest River, Inc.,* 2017 U.S. Dist. LEXIS 122068 (E.D. La. 2017) is misplaced, because *Hardin* denied a motion to dismiss plaintiff's redhibition claim and therefore never reached the issue of whether a MMWA claim can withstand dismissal of a redhibition claim. *Id.* at 5.

**V.** **The Louisiana Products Liability Act precludes plaintiffs' "negligent repair" claim.**

Finally, plaintiffs do not dispute that AHM itself performed no repairs on their vehicle, and they offer no competent evidence that would subject AHM to liability for negligent repairs, if any, that Orr, a non-party, may have performed.[44] In any event, their reliance on *C-Innovation, LLC v. Norddeutsche Seekabelewerke GMBH,* 2013 U.S. Dist. LEXIS 34646 (E.D. La. 2013)[45] is misplaced. The *C-Innovation* court did not hold that the LPLA permitted "negligent repair" claims. Instead, it held that the LPLA's exclusivity provision exempted claims under all of the articles within "Chapter 9 of Title VII of Book III of the Civil Code, entitled 'Redhibition.'" *Id.* at *20-21 (citing La. Rev. Stat. 9:2800.53(5)). Civil Code article 2315, the basis for any "negligent

---

[44] Doc. 21 at pp. 21-2.
[45] Doc. 21 at p. 22.

10

repair" claim, is not among those articles, and contrary to what plaintiffs' opposition represents, they have not asserted any "breach of contract" claim against AHM.[46]

## VI. Conclusion.

For all these reasons, AHM again requests that the Court grant its motion for summary judgment and enter judgment for AHM as prayed for in that motion.

Respectfully submitted,
/s/ Mark N. Bodin
MARK N. BODIN (BAR NO. 18803)
CHARLES S. SMITH (BAR NO. 33650)
*McGlinchey Stafford, PLLC*
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Telephone (504) 586-1200
Facsimile: (504) 910-9524
**ATTORNEYS FOR AMERICAN HONDA MOTOR CO., INC.**

## CERTIFICATE OF SERVICE

In accordance with the Western District of Louisiana's electronic filing procedures, I hereby certify that, on this Friday, May 3, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. A Notice of Electronic Filing will be sent by the Court to all counsel of record who have consented to email notification and electronic service. This document is available for viewing and downloading from the Court's ECF system.

/s/ Mark N. Bodin
MARK N. BODIN

---

[46] Doc. 21 at p. 22. Plaintiffs' complaint (Doc. 3) asserts three claims against AHM: redhibition ("Count 1"), Magnuson-Moss ("Count 2"), and negligent repair ("Count 3").

11